IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LISA G. FINCH, Individually, as Co-Administrator
of the Estate of Andrew Thomas Finch, deceased,
and as Next Friend for her minor granddaughter,
AF; DOMINICA C. FINCH, as Co-Administrator
of the Estate of Andrew Thomas Finch, deceased;
and ALI ABDELHADI,

                Plaintiffs,

vs.                                     Case No. 18-CV-01018-EFM-KGS

CITY OF WICHITA, KANSAS;
JOHN DOE POLICE OFFICERS 1-10,

                Defendants.

## **ANSWER OF DEFENDANT CITY OF WICHITA**

Defendant, City of Wichita, answers plaintiffs' Complaint as follows:

1.      All allegations of the Complaint not expressly admitted herein are denied.

ANSWER TO INTRODUCTION

2.      Defendant admits that plaintiffs' Complaint purports to assert claims under 42 U.S.C. § 1983 but denies that plaintiffs have any viable claims.

3.      Answering ¶ 2, Wichita police officers were dispatched at 6:19 p.m. to 1033 W. McCormick Street in Wichita, Kansas on December 28, 2017.  Dispatch reported that a male resident of 1033 W. McCormick had shot his father in the head and was holding his brother and mother hostage at gunpoint.  Officers who initially responded set up a perimeter to await arrival of a special weapons assault team and hostage negotiator to make contact with occupants of the house.  As officers established the perimeter, a male, later determined to be Andrew Finch,

{T0454551}                          1

opened the front door, initially partially raised his hands in response to orders by officers but then disregarded orders, lowered his right arm and moved as if to retrieve a weapon from his right side and then raised his arm toward officers.  From a position across the street, an officer, based upon the information that a male suspect in the house had shot one person, held others at gunpoint, and poured gasoline in the house and the actions of Finch in ignoring officers' commands to hold up his hands and walk toward officers but instead lowering his right hand to his waist and then raising his arm toward officers, reasonably perceived Finch to intend to fire a gun at other officers, presenting an imminent threat of death or serious bodily injury to other officers.  That officer fired one bullet to protect other officers from the threat.  Defendant denies all other allegations of ¶ 2 as incorrect or because defendant has insufficient information to form a belief as to the truth of those allegations.

4. Answering ¶ 3, defendant states that Lisa Finch, Ali Abdelhadi and AF promptly exited the house after the shot was fired.  Each was handcuffed for safety as officers investigated, still understanding that they confronted an active shooter situation.  Each voluntarily went with officers to the Wichita Police Department.  All other allegations of ¶ 3 are denied.

5. Answering ¶ 4, officers responded to 1033 W. McCormick pursuant to the dispatch that the calling party in that residence had shot his dad in the head, was holding his mom and brother at gunpoint, and wanted to kill himself and light the house on fire.  It was later determined that the reporting party was not truthful and the report that the man had shot his father and was holding two hostages at gunpoint at 1033 W. McCormick was false.

## ANSWER TO JURISDICTION AND VENUE

6. Defendant admits that this court has subject matter jurisdiction of purported claims under 42 U.S.C. § 1983 but denies the remainder of ¶ 5.

7. Answering ¶¶ 6 and 7, defendant admits that venue is proper in this district and that plaintiffs have asserted that the amount in controversy exceeds $75,000.

## ANSWER TO PARTIES

8. Defendant has insufficient information to form a belief as to the truth of the allegations of ¶¶ 8 and 9 which are denied.

9. Answering ¶ 10, defendant admits that the City is a Kansas municipality and that the police department is a department within the City.

10. Defendant has insufficient information to form a belief as to the truth of the allegations of ¶ 11 which are denied.

## ANSWER TO "FACTS"

11. Answering ¶ 12, subsequent investigation established that the telephone call from an individual purporting to be located at 1033 W. McCormick stating that he had shot his father and was holding his mother and brother at gunpoint, had poured gasoline in the house and was threatening further death and injury, was false. All other allegations of ¶ 12 are denied as incorrect or based upon insufficient information to form as belief as to the truth of the allegations.

12. Answering ¶¶ 13 and 14, as a result of the continuing calls from the individual falsely asserting that he had shot his father and was holding his mother and brother at gunpoint and threatening other injury and death, dispatch notified Wichita police officers, Sheriff's deputies and possibly other law enforcement of the call. Officers responded accordingly.

13. Answering ¶ 15, officers responded based upon the information dispatched which included that a man had shot his father and was holding his mother and brother at gunpoint. While officers were present at 1033 W. McCormick subsequent to the shooting, further

dispatches were received that the male suspect had poured gasoline in the house and threatened additional death and injury. Other allegations of ¶ 15 are denied.

14. Answering ¶ 17, responding officers set up a perimeter around 1033 W. McCormick. All other allegations of ¶ 16 are denied.

15. Answering ¶ 18, officers subsequently learned that occupants then in the house were Andrew Finch, Lisa Finch, AF, Ali Abdelhadi and two other individuals.

16. Answering ¶ 19, following the shooting, it was learned that no occupant of 1033 W. McCormick was in a mental health crisis, had threatened to hold or was holding anyone at gunpoint at that time, had threatened to burn the house, to commit suicide, was subject to an existing arrest warrant or was armed at that time. Defendant has insufficient information to form a belief as to the truth of the allegation that no occupant had ever shot any person or that no occupant presented a threat to officers or anyone else and therefore denies those allegations. Defendant denies the allegation that no occupant had committed a crime.

17. Answering ¶ 20, within 30 seconds of officers establishing a perimeter around the house, a white male opened the door, was instructed by officers to raise his hands and show his hands and was told to "walk this way" but, disregarding officers' instructions, lowered his hands and moved his arms so that he appeared to be drawing a weapon from his right side and raising his arm toward officers. As a result, an officer covering the residence with a rifle reasonably perceived that the male presented an imminent threat of death or serious bodily injury to those officers and fired one shot to protect those officers. All other allegations of ¶ 21 are denied.

18. Answering ¶ 22, only one officer discharged a weapon.

19. Answering ¶ 23, occupants of 1033 W. McCormick were handcuffed as officers investigated the situation. Lisa Finch authorized a search of the residence and a search warrant

was secured. The residence was searched and items subject to the search warrant were seized. All other allegations of ¶ 23 are denied.

20. Defendant has insufficient information to form a belief as to the truth of the allegation of ¶ 24 and, therefore, denies that allegation.

ANSWER TO COUNT 1 – § 1983 CLAIM OF ESTATE OF ANDREW FINCH

21. Defendant has insufficient information to form a belief as to the truth of the allegations of ¶ 25 and for that reason denies those allegations.

22. ¶¶ 26, 27 and 28 are denied.

23. Count 1 fails to state a claim upon which relief can be granted against the City.

ANSWER TO COUNT 2 – § 1983 CLAIM OF LISA FINCH

24. Defendant incorporates its foregoing answer in response to ¶ 29.

25. ¶¶ 30, 31 and 32 are denied.

26. Lisa Finch was temporarily detained as officers resolved an unclear and dangerous situation based upon the dispatch report and events. Finch consented and voluntarily accompanied officers to the police department to be interviewed.

27. Count 2 fails to state a claim upon which relief can be granted against the City.

ANSWER TO COUNT 3 – § 1983 CLAIM OF ALI ABDELHADI

28. Defendant incorporates its foregoing answer in response to ¶ 33.

29. ¶¶ 34, 35 and 36 are denied.

30. Ali Abdelhadi was temporarily detained as officers resolved an unclear and dangerous situation based upon the dispatch report and events. Abdelhadi consented and voluntarily accompanied officers to the police department to be interviewed.

31. Count 3 fails to state a claim upon which relief can be granted against the City.

ANSWER TO COUNT 4 – § 1983 CLAIM OF AF

32.   Defendant incorporates its foregoing answer in response to ¶ 37.

33.   ¶¶ 38, 39 and 40 are denied.

34.   AF was temporarily detained as officers resolved an unclear and dangerous situation based upon the dispatch report and subsequent events.  AF consented and voluntarily accompanied officers to the police department to be interviewed.

35.   Count 4 fails to state a claim upon which relief can be granted against the City.

ANSWER TO COUNT 5 – § 1983 CLAIM OF ESTATE AGAINST CITY

36.   Defendant incorporates its foregoing answer in response to ¶ 41.

37.   ¶¶ 42 and 43 are denied.

38.   ¶¶ 44 through 52 are immaterial to any claim asserted by plaintiffs and inconsistent with plaintiffs' allegation that no occupant of 1033 W. McCormick was in a mental health crisis or threatening suicide.  See ¶ 19(a) and (e) of the Complaint.  The allegations of ¶¶ 44 through 52 should be stricken as immaterial pursuant to F.R.Civ.P. 12(f).

39.   Answering ¶¶ 53, 54, 55 and 56, Wichita Police Department Regulation 4 is accurately quoted in part although bolding was added which is not contained in the original and is not quoted from the Regulation in effect in December 2017.  Regulation 4.1 adopts the requirements of Kansas and federal law governing use of force by law enforcement officers.

40.   Answering ¶ 57, the Wichita Police Department trains officers with regard to the use of force in accordance with the objective reasonableness requirements of *Graham v. Connor* as adopted by the Federal Law Enforcement Training Center.

41.   ¶ 58 is denied.

42. Answering ¶ 59, consistent with other criminal investigations, the City declines to disclose any suspect's identity until completion of the investigation.

43. ¶ 60 is denied.

44. Answering ¶ 61, pursuant to WPD Policy 204, officers in incidents involving a job-related death are provided assistance to ensure that they are emotionally and mentally prepared to return to work assignments and to alleviate stress-related symptoms that can occur as a result of traumatic incidents. Pursuant to the policy, CISMT team members are available to explain the stress evaluation process to assist the officer in coping with stress-related issues. Policy 904 prohibits CISMT members from providing advice concerning the officer's response to the criminal investigation. The remaining allegations and implications of ¶ 61 are denied.

45. Answering ¶ 62, a civilian review board is in place to review officer involved shootings following conclusion of the criminal and internal investigations.

46. ¶¶ 63 through 66 are denied.

47. The first sentence of ¶ 67 is denied. The city does not publicly release the names of the officers involved.

48. Answering ¶ 68, following investigation the District Attorney has determined that the officers' shootings were justified in all cases except one in which no decision was reached. The remaining allegations of ¶ 68 are denied.

49. Answering ¶ 69, for each officer-involved shooting resulting in injury or death of an individual from January 1, 2016 to present for which an investigation has been completed and for which the District Attorney has completed review, the use of force was objectively reasonable and legally justified.

50. Answering ¶ 70, the Wichita Police Department conducts both a criminal investigation and an administrative investigation of officer-involved shootings.

51. Answering ¶ 71, defendant states that pursuant to the Federal Bureau of Investigation Crime Reporting Manual, shootings by an officer in the line of duty are classified as justifiable homicides. The classification has no bearing on the scope of investigation, the final classification or the subsequent determination by the Sedgwick County District Attorney.

52. ¶¶ 72 and 73 are denied.

53. Answering ¶ 74, the Kansas Bureau of Investigation as well as the Sedgwick County District Attorney's office is involved in investigation of an officer-involved shooting with representatives involved from the beginning of the investigation. The Kansas Bureau of Investigation has a limited number of special agents available to provide the resources required for the KBI to perform the investigation itself. The KBI participates in key portions of the investigation including interviews of the officers involved and key witnesses.

54. Answering ¶ 75, the Kansas Bureau of Investigation provides oversight, direction and assistance in investigating officer-involved shootings consistent with its resources. The remaining allegations of ¶ 75 are denied.

55. Answering ¶ 76, the involvement of non-law enforcement witnesses to officer-involved shootings depends upon the level of cooperation of the witness in the investigation. Cooperating witnesses are interviewed with the interviews recorded by audio and video recording equipment. Preferably, these witnesses are segregated pending completion of interviews. However, witnesses can decline to be interviewed, seek counsel or take other action.

56. Answering ¶ 77, officers involved in shootings are segregated from other officers who are witnesses and are not permitted to discuss the details of the shooting with other officers.

Officers, like any individual who is the focus of a criminal investigation, are entitled to legal counsel.

57.     Answering ¶ 78, officers are permitted to contact spouses to inform them that they have been involved in a shooting and will be occupied for an indefinite period of time until interviews are concluded. The remaining allegations of ¶78 are denied.

58.     Answering ¶ 79, officers are permitted access to their Fraternal Order of Police representative to assist in arranging legal counsel. WPD Policy 904 prohibits FOP representatives from discussing the specifics of the shooting with the officers. The remaining allegations of ¶ 79 are denied.

59.     Answering ¶ 80, officers involved in a shooting are interviewed by homicide detectives with the assistance and oversight of KBI special agents and sometimes assistants from the District Attorney's Office.

60.     ¶¶ 81 and 82 are denied.

61.     Answering ¶ 83, officer-involved shootings since 2010 involving serious injury or death have been justified.

62.     ¶¶ 84, 85, and 86 are denied. Neither the figures nor the calculations are correct. The purported links cited are not viable.

63.     ¶ 87 is denied. The Wichita Police Department training budget is in excess of two million dollars. The Wichita Police Department budget for police training for 2018 is $2,447,015.

64.     ¶ 88 misrepresents the information in the Uniform Crime Report of the FBI for 2011. According to the report, the rate of sworn officers per 1,000 inhabitants in 2011 based upon those agencies that did report, was 2.4. The 3.4 figure was not a rate of police officers to

population but a ratio of law enforcement employees, both civilian and sworn, per 1,000 inhabitants.  The Crime Report warns that "readers should use caution when drawing comparisons between agencies' staffing levels based upon police employment data from the UCR program."  Further, the report highlights that "in addition, the data presented here reflects existing staff levels and should not be interpreted as preferred officer strengths recommended by the FBI."  The totals listed for any particular agency were not only for patrol officers on the street but also officers assigned to various other duties including administrative, investigative and special assignment officers.

65. ¶¶ 89, 90, 91, 92, 93, 94 and 95 are denied.

ADDITIONAL DEFENSES

66. Plaintiffs filed this Complaint less than 30 days after the incident without adequate investigation.  The Complaint contains inaccurate allegations and is replete with immaterial broad conclusory statements that parrot the requirements to assert a claim against a City under *Monell* without the required specific factual allegations.

67. The Complaint fails to state a claim upon which relief can be granted against the City.

WHEREFORE, defendant prays for judgment dismissing plaintiffs' claim and for its costs and attorney's fee pursuant to 42 U.S.C. § 1988.

**DEMAND FOR JURY TRIAL**

Defendant City of Wichita demands all appropriate fact issues be tried to a jury.

/s/ J. Steven Pigg
J. Steven Pigg                                    #09213
FISHER, PATTERSON, SAYLER & SMITH, L.L.P.
3550 S.W. 5th St.
Topeka, KS  66606
(785) 232-7761 / (785) 232-6604 – fax
E-mail:  spigg@fisherpatterson.com
**Attorney for Defendant City of Wichita**

and

JENNIFER L. MAGAÑA, #15519
City Attorney
SHARON L. DICKGRAFE  #14071
Chief Deputy City Attorney
City Hall-13th Floor
455 North Main
Wichita, KS 67202
(316) 268-4681 / (316) 268-4335 – fax
Email:  sdickgrafe@wichita.gov
**Attorneys for Defendant City of Wichita**

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2018, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

Rick E. Bailey
CONLEE, SCHMIDT & EMERSON, LLP
200 W. Douglas, Suite 300
Wichita, KS 67202
rbailey@fcse.net
**Attorney for Plaintiffs**

Andrew M. Stroth
Carlton Odim
ACTION INJURY LAW GROUP, LLC
191 North Wacker Drive, Suite 2300
Chicago, IL  60606
astroth@actioninjurylawgroup.com
carlton@actioninjurylawgroup.com
*Pro Hac Vice* **Attorneys for Plaintiffs**

Alexa Van Brunt
Roderick and Solange MacArthur Justice Center
Northwestern Pritzker School of Law
375 E. Chicago Ave., 8th Floor
Chicago, IL 60611
a-vanbrunt@law.northwestern.edu
***Pro Hac Vice* Attorney for Plaintiffs**

I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: No one.

      /s/ J. Steven Pigg
      J. Steven Pigg