**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

LISA G. FINCH, *et al.*,

Plaintiffs,

v.

CITY OF WICHITA, KANSAS, *et al.*,

Defendants.

Case No. 18-1018-JWB-ADM

**MEMORANDUM AND ORDER**

This matter comes before the court on Plaintiffs' Motion for Leave to Disclose Supplemental Expert Report (ECF No. 126). Plaintiffs seek leave to supplement their police-practices expert's report to address discovery obtained after plaintiffs' expert disclosure deadline. Defendants oppose the motion. For the reasons stated below, the motion is granted.

## I. BACKGROUND

Plaintiffs' claims stem from a tragic shooting death after the City of Wichita 911 received a prank phone call on December 28, 2017. The caller claimed he had shot his father, was holding his mother at gunpoint, was going to burn down the house and commit suicide, and provided the Finch address as his residence. (Am. Compl. ¶ 18, ECF No. 64.) The City of Wichita 911 dispatched the Wichita Police Department ("WPD") to the Finch home. WPD Sergeant Benjamin Jonker and WPD Officer Justin Rapp arrived at the scene. (*Id.* ¶ 16.) Unbeknownst to the authorities, the caller was a man in California who was providing false information. Plaintiffs allege that, while WPD officers surrounded the property, Mr. Finch was inside his Wichita home with his mother, sister, nice, and two friends. (*Id.* ¶ 2.) Mr. Finch opened the front door to see what was happening outside, and Officer Rapp shot and killed him. (*Id.* ¶ 27.) Plaintiffs allege that, after the shooting, WPD officers unlawfully detained them. (*Id.* ¶ 29.) Based on these general

allegations, plaintiffs filed this 42 U.S.C. § 1983 case. They assert Fourth Amendment excessive force and unconstitutional seizure claims against the defendant WPD officers, a supervisory liability claim against Sergeant Jonker, and a *Monell* claim against the City of Wichita.

The scheduling order originally set forth deadlines of January 18, 2019, and April 12, 2019, respectively, for plaintiffs' and defendants' expert disclosures pursuant to FED. R. CIV. P. 26(a)(2). (ECF No. 20, at 2.) On January 7, 2019, plaintiffs moved to extend their expert disclosure deadline to May 20, 2019, because of outstanding discovery. (ECF No. 77, at 2.) Plaintiffs explained that they had sent and received four sets of requests for production ("RFPs"), issued multiple third-party subpoenas, and were in the process of deposing WPD officers who had been on the scene the night of the Finch shooting. At that time, plaintiffs had deposed nine officers. Plaintiffs explained that discovery was taking considerable time because there were many WPD officers, supervisors, and other personnel at the Finch home the night of the shooting and still others who participated in subsequent criminal and administrative investigations into the incident. Plaintiffs noted that defendants' FED. R. CIV. P. 26(a)(1) initial disclosures listed more than 100 witnesses likely to have discoverable information. The motion also specifically noted that plaintiffs still required a series of FED. R. CIV. P. 30(b)(6) depositions to obtain information about the City of Wichita's customs, policies, and practices—information directly relevant to plaintiffs' *Monell* claim. Plaintiffs explained that this information was necessary because the "experts will rely on all deposition transcripts, as well as the written discovery, in formulating their opinions." *Id.* at 3. The court granted the motion in part, and required plaintiffs to serve expert disclosures by February 28, 2019. The court subsequently extended the deadline to March 5, 2019.

On March 5, 2019, plaintiffs disclosed police-practices expert Scott DeFoe. Plaintiffs contend that, since then, they have obtained significant discovery pertaining to their *Monell* claim

on which Mr. DeFoe should be permitted to disclose a supplemental report in accordance with FED. R. CIV. P. 26(e). Plaintiffs state that, between March 22, 2019, and April 19, 2019, they obtained discovery concerning the WPD's policies and practices relating to officer accountability for the use of force, including officer-involved shootings. This includes investigative files (or portions thereof) relating to officer-involved shootings, the Rule 30(b)(6) deposition transcript on officer accountability, the WPD police chief's deposition transcript pertaining to accountability, and the depositions of the Professional Standards Bureau ("PSB") detectives who conducted the internal investigations of other officer-involved shootings. Additionally, on April 5, 2019, defendants served supplemental Rule 26 disclosures identifying 30 additional witnesses involved in investigating other WPD officer-involved shooting incidents that serve as the basis of plaintiffs' *Monell* claim. Plaintiffs deposed various PSB detectives throughout May and June.

Defendants object to plaintiffs' proposed supplemental expert report based on their contention that plaintiffs could have obtained much of this information sooner. For example, defendants note that although plaintiffs' January 7 motion raised the need to take Rule 30(b)(6) depositions, plaintiffs failed to notice any depositions until April 4. Defendants also note that defendants objected to producing the entire investigative files regarding other officer-involved shootings and that plaintiffs' counsel was aware of the objections. Defendants point to correspondence with plaintiffs' counsel in which counsel acknowledged that the City was not producing these documents. (ECF No. 128-4, at 2.) In the same correspondence, however, plaintiffs' counsel continued to press for "the investigative records, personnel files and disciplinary records, as those are directly relevant to our *Monell* claims." (*Id.*) After plaintiffs' new counsel entered their appearances, one of those attorneys revisited the issue. Defendants agreed to a limited production of specific documents for six officer-involved shootings that plaintiffs' expert had

questioned. Defendants also argue that the identities of the PSB detectives plaintiffs deposed should have been apparent to plaintiffs sooner because the detectives' names were contained in the PSB reports produced in October 2018. However, plaintiffs did not request to depose these individuals until April 3, 2019.

Following a discovery conference with the court on May 16, 2019 (ECF No. 114), the parties filed a Joint Motion to Amend Scheduling Order (ECF No. 115). In that motion, the parties explained that, "[d]espite the industrious efforts of counsel, significant discovery remains"—specifically, with respect to depositions. (*Id.* at 1-2.) The parties therefore agreed to extend the discovery deadline to September 20, 2019, and the dispositive motion deadline to November 8, 2019. The court granted the requested extension. (ECF No. 116.) In that order, the court reiterated that "FED. R. CIV. P. 26(e) supplemental disclosures must be served at such times and under such circumstances as required by that rule [and] . . . such supplemental disclosures must be served 40 days before the deadline for completion of all discovery." (*Id.*) The court has not yet set a trial date or established a deadline for pretrial disclosures.

## II. LEGAL STANDARD

Expert disclosures must be accompanied by a written report prepared and signed by the expert witness that provides "a complete statement of all opinions the witness will express and the basis and reasons for them." FED. R. CIV. P. 26(a)(2)(B)(i). A party must make expert disclosures "at the times and in in the sequence that the court orders." FED. R. CIV. P. 26(a)(2)(D). Additionally, a party must timely supplement its expert disclosures if it learns that the information disclosed was incomplete or incorrect. FED. R. CIV. P. 26(e); *see also* FED. R. CIV. P. 26(a)(2)(E) (imposing a continuing obligation to supplement expert disclosures "when required under Rule 26(e)"). However, expert report supplementations under Rule 26(e) "are not intended to provide

an extension of the deadline by which a party must deliver the lion's share of its expert information." *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 371 (5th Cir. 2016). "Rather, supplementation may only be based upon additional or corrective information that was unavailable when the expert made his or her initial report." *Sibley v. Sprint Nextel Corp.*, No. 08-2063-KHV, 2013 WL 1819773, at *3 (D. Kan. Apr. 30, 2013) (internal quotations omitted). Even when a supplemental expert report extends beyond the parameters allowed by Rule 26(e), the court retains discretion to allow the report if doing so is justified or is harmless. *See id.* (ruling on a motion to supplement and a motion to strike and relying on Rule 37(c), which "permits a district court to refuse to strike expert reports and allow expert testimony . . . if the violation is justified and harmless").[1]

## III. DISCUSSION

The court grants plaintiffs' motion and will allow the supplemental expert report because: (1) it appears to be largely based on information that plaintiffs did not have when they served their expert disclosures on March 5; (2) allowing the report is justified and harmless to the defendants because of the time remaining in discovery.

### A. New Information Obtained Through Discovery

The parties' briefs largely focus on the discovery obtained after plaintiffs served their expert disclosures on March 5. Defendants appear to have a legitimate point that plaintiffs could have obtained at least some of this discovery sooner. However, by the parties' own representations, this case has involved ongoing discovery since plaintiffs' March 5 expert

[1] Although not briefed by the parties, the court also has the authority to modify scheduling order deadlines—including expert disclosure deadlines—for good cause shown. FED. R. CIV. P. 16(b)(4).

disclosures, including depositions of various WPD officers (both on the scene and those who have investigated officer-involved shootings), the Rule 30(b)(6) deposition on officer accountability, and the WPD police chief's deposition. The parties also experienced delays over a dispute concerning defendants' RFP responses. Plaintiffs, so that they could obtain much of this information before serving their expert disclosures, sought an extension of the expert deadline, which the court granted in part. (ECF No. 77.) Furthermore, the parties agreed that they needed an extension to September 20, 2019, in order to complete discovery. Under these circumstances, the record does not establish an overall lack of diligence or that plaintiffs could have reasonably obtained all the information now available by the time Mr. DeFoe submitted his initial report on March 5. Because Mr. DeFoe's supplemental report is based on at least some information that was not reasonably obtainable by March 5, plaintiffs may properly supplement the report pursuant to FED. R. CIV. P. 26(e).

**B. Justification & Harmlessness**

The court generally considers justification and harmlessness on a motion to Rule 37 motion to exclude expert testimony—not when a party seeks to serve a supplemental expert report during the discovery period. Nevertheless, the factors considered on a motion to exclude favor allowing the supplemental report. When determining whether a failure to disclose is harmless or justified, the court considers: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey*, 663 F.3d 1124, 1130 (10th Cir. 2011). The last three factors are not at issue. Any prejudice to defendants can be cured through ongoing discovery.

The court is not considering admissibility at this stage, so the third factor is not at issue. And there is no evidence of bad faith or willfulness. That leaves only prejudice to defendants.

Defendants argue they would be prejudiced because their expert would be required to revisit any new opinions and develop a new report at additional expense to defendants. They state that supplementation "will entail a significant additional discovery and expenses . . . and is plainly not harmless." However, the relief defendants are requesting is effectively tantamount to excluding expert testimony. In *Gillum v. United States*, the Tenth Circuit held that the district court committed reversible error by excluding expert testimony where the substance of the expected testimony was known and there was an adequate opportunity to cure the prejudice by making the expert available for a second deposition—all before the end of the discovery period. 309 F. App'x. 267, 269-270 (10th Cir. Jan. 30, 2009). Although *Gillum* was an unpublished decision, it is nevertheless instructive and illustrates the preference that "litigation should promote the finding of the truth, and, wherever possible, the resolution of cases on their merits." *Id.* at 270.

The timing of plaintiffs' proposed expert supplementation aligns with that set forth in *Gillum*. Plaintiffs are offering to make the substance of Mr. DeFoe's additional expert testimony known via a supplemental expert report. They are offering to produce him for a second deposition. Defendants will have an adequate opportunity to submit a responsive expert report. And all of this can be done by the discovery deadline on September 20, 2019. Therefore, even if defendants will suffer some degree of prejudice, it can be cured without disrupting the current schedule.

Defendants also rely on two cases from this district—*Spirit Aerosystems v. SPS Technologies, LLC*, No. 09-CV-1144-EFM-KGG, 2013 WL 6196314, at *1 (D. Kan. Nov. 27, 2013), and *Fish v. Kobach*, No. 16-2105-JAR, 2018 WL 1116534, at *1 (D. Kan. Feb. 27, 2018). Both of those cases are distinguishable. The court struck a portion of a supplemental expert report

in *Spirit Aerosystems*, but the court did so at the summary judgment stage where the defendants would have been prejudiced because it was too late for them to "obtain additional discovery, designate a rebuttal witness, or adequately prepare for an effective cross examination at [the expert's] deposition." 2013 WL 6196314, at *8. Similarly, the court in *Fish* disallowed an expert report supplementation on the eve of trial that would have derailed the trial date. 2018 WL 1116534, at *8 (stating that the court was "unwilling to allow this untimely supplementation on the eve of trial, particularly given the paltry showing that Defendant made reasonable efforts to supplement when the new data became available"). These cases do not resemble the timing here, where plaintiffs sought leave to supplement months before the close of discovery and there is adequate time to cure any prejudice to defendants.

## IV. CONCLUSION

For the reasons stated above, plaintiffs' motion is granted. Plaintiffs shall serve Mr. DeFoe's supplemental expert report by **July 29, 2019**. If defendants require a second deposition of Mr. DeFoe, plaintiffs shall make him available for deposition by **August 9, 2019**. Defendants are granted leave to serve their own supplemental expert report addressing Mr. DeFoe's supplemental expert report by **August 30, 2019**.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Leave to Disclose Supplemental Expert Report (ECF No. 126) is granted.

**IT IS SO ORDERED.**

Dated July 16, 2019, at Topeka, Kansas.

Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge