# EXHIBIT 24

**Lisa G. Finch, et al. vs. City of Wichita, Kansas**

**Case No. 18-cv-1018-JWB-ADM**

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**January 14, 2020**



| Wichita Police Department Policy Manual | Page 1 of 11 |
|---|---|
| Approved by: | Maintained by: Chief of Police |
| Regulation 4.0 – Weapons/Use of Force Requirements | Issue/Rev.: R 01-28-2013 |

**Regulation 4.1—Weapons/Use of Force**                    Issue/Rev.: R 01-28-2013

Penalty

4.101    This regulation presents guidelines for the use of firearms and other authorized weapons. The use of firearms by law enforcement members is authorized and limited by state statute.  K.S.A 21-5227 states:

**21-5227. Law enforcement officer making arrest.** (a) A law enforcement officer, or any person whom such officer has summoned or directed to assist in making a lawful arrest, need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. Such officer is justified in the use of any force which such officer reasonably believes to be necessary to effect the arrest and the use of any force which such officer reasonably believes to be necessary to defend the officer's self or another from bodily harm while making the arrest. However, such officer is justified in using deadly force only when such officer reasonably believes that such force is necessary to prevent death or great bodily harm to such officer or another person, or when such officer reasonably believes that such force is necessary to prevent the arrest from being defeated by resistance or escape and such officer has probable cause to believe that the person to be arrested has committed or attempted to commit a felony involving death or great bodily harm or is attempting to escape by use of a deadly weapon, or otherwise indicates that such person will endanger human life or inflict great bodily harm unless arrested without delay.

(b)    A law enforcement officer making an arrest pursuant to an invalid warrant is justified in the use of any force which such officer would be justified in using if the warrant were valid, unless such officer knows that the warrant is invalid.

In a stressful situation, a police member's first reaction should be to determine whether the objective can be accomplished without the use of a weapon.  A member's decision, relative to the use of a force, must be legally justifiable, and thoroughly articulated, considering both the nature of the crime and circumstances surrounding the incident.

This Department recognizes and respects the value and special integrity of each human life.  In vesting police members with the lawful authority to use force to protect the public welfare, a careful balancing of all human interests is required.  Therefore, it is the policy of this Department that police members shall use only that force that is objectively reasonable, based on the totality of the circumstances, to effectively bring an incident under control, in making a lawful arrest, while protecting the life of the member, or the life of another person.

4.102    The Department realizes and acknowledges that intense, uncertain, and/or rapidly evolving confrontations a member may have to reasonably use techniques, weapons, and/or improvised weapons that are:

1. Not a part of the Department's formal training program;

2 Or that may not be covered in this regulation;

3. Or that the member may have to use a technique or weapon in a manner that is not in conformity to training;

4. Or due to the suspect's actions, the technique or weapon use has an unintentional (on the part of the member) impact point or outcome that is not part of the Department's training curriculum.

All members' actions that are deemed reasonable in retrospect will be considered to be within policy and regulation, even if the specific action and/or operation are not specifically addressed here.

DRAWING AND DISPLAYING A FIREARM

4.103    D    Drawing and displaying firearms shall be limited to:

A.    When a member, in the exercise of sound judgment, has reason to fear for his/her personal safety or for the safety of others;

B.    For inspection purposes; and

C.    During departmentally approved training.

DISCHARGING FIREARM/USE OF LETHAL FORCE

4.104    D    Discharging of firearm/use of lethal force is allowed Pursuant to K.S.A. 21-5227 as cited above.

A.    When practical, a verbal warning for the suspect to submit to the member shall be given prior to the use of lethal force in any situation unless doing so would increase the danger to the member or others.

B.    A member is also authorized to discharge a firearm under the following circumstances:



Mumma
EXHIBIT NO. 83
DATE 4-18-19
Kelley, York & Associates

WICHITA  015393

| Regulation 4.0 – Weapons/Use of Force Requirements | Page 2 of 11 | Issue/Rev.: R 01-28-2013 |
|---|---|---|

   1. At an approved range;

   2. To kill an animal in self-defense, or to prevent a dangerous animal from causing serious injury to another person. If the animal must be killed, the fatal wound should be inflicted in such a manner as to not damage the animal's head;

   3. To humanely kill a severely injured large or dangerous animal

**4.105  D**  SITUATIONS WHEN DISCHARGING A FIREARM IS NOT JUSTIFIED
A member is not justified in discharging a firearm under any of the following circumstances:

   A. When use of less force would safely accomplish the objective;

   B. To apprehend a fleeing offender who has committed a misdemeanor only;

   C. To fire a warning shot;

**NONE**  While not prohibited, caution should always be used when discharging a firearm, to fire from or at a moving vehicle while in compliance with K.S.A. 21-5227

**4.106  D**  USE OF LESS-LETHAL FORCE
Where lethal force is not authorized, members should assess the incident in order to determine which less-lethal force technique or weapon will best de-escalate and bring the incident under control in a safe manner.

**4.107  D**  Other than conditions described under 4.109, 4.113 and 4.119, drawing and displaying aerosol weapons, batons and Tasers by members of the Department are limited to:

   A. For inspection purposes;

   B. During Departmentally approved training.

**4.108  D**  Once suspects are physically restrained and compliant, the use of aerosol weapons, batons and Tasers are no longer authorized.

**4.109  C**  AEROSOL WEAPONS
Use of an aerosol weapon is authorized as an escalation of force after verbal control techniques have proven ineffective in de-escalating a potentially violent incident and bringing it under control in a safe manner. The aerosol weapon is authorized to be used by a Department member when he/she reasonably believes that such force is necessary:

   A.  To defend themselves or another

   B.  To prevent an arrest from being defeated by resistance

   C.  To prevent an attempt to evade an arrest by flight

   D.  On animals, when necessary for the safety of the member or public.

**4.110  B**  Department members who are required to carry an aerosol weapon as part of their duty equipment shall have it on their duty belt and be properly trained in its use.

**4.111  B**  After spraying a person, proper decontamination procedures shall be given as soon as reasonably practicable. A member of the Department should monitor a suspect closely to detect any medical problems or extreme reactions, and summon medical assistance immediately.

**4.112  B**  BATONS
All uniformed non-supervisory personnel authorized to carry a baton shall be required to have the baton in his/her possession when responding to calls for service.

**4.113  C**  A member is authorized to use a baton when he/she reasonably believes that such force is necessary

   A.  To defend themselves or another

   B.  To prevent an arrest from being defeated by resistance.

   C.  To prevent an attempt to evade an arrest by flight.

   D.  On animals, when necessary for the safety of the member or public.

WICHITA  015394

| Regulation 4.0 -- Weapons/Use of Force Requirements | Page 3 of 11 | Issue/Rev.: R 01-28-2013 |

4.114    C    Members utilizing a baton should direct defensive blows towards strategic areas of the body, avoiding the head and neck area. Utilization of a choke-hold using a police baton is prohibited as a containment or takedown procedure. Such action shall be taken only as a defensive measure and only as a last resort to prevent death or great bodily harm to the member or another person. Members will utilize methods consistent with departmental training.

4.115    The "Expandable Baton Training" is the recognized departmental procedure for using a baton. The Training Bureau shall be responsible for providing instruction to members in the concepts and mechanics of this method.

4.116    A    Only members of the Department specifically trained in the use of departmentally approved batons will be allowed to carry one as part of their duty equipment.

ELECTRONIC CONTROL DEVICES (TASERS)

4.117    A    The Taser X-26LE and Taser X-2 are the only departmentally approved electronic control devices.
R         Department members are only authorized to carry the Taser they have been specifically trained on as part of their duty equipment.

4.117.01  A    The Taser shall be carried in an approved holster on the side of the body opposite the service handgun to avoid the accidental drawing and/or firing of an officer's sidearm.

4.117.02  None    When practical, officers should give a verbal warning before deploying the Taser.

4.118    B    All uniformed, non-supervisory Field Services personnel shall be required to carry a Taser and have it in his/her possession when responding to calls for service. Tasers will be securely stored at a Police facility when not checked out for use. Any other arrangements for carrying (or not carrying), possessing or storing Tasers, must have prior approval from a Bureau Commander. Members of the Department working in an off duty capacity and trained on the Taser may carry the Taser while employed in that capacity. The Taser utilized must be the departmentally approved Taser X-26LE.

4.119    C    A member is authorized to use a Taser when he/she reasonably believes that such force is necessary:

A. To defend themselves or another.

B. To prevent an arrest from being defeated by resistance.

C. To prevent an attempt to evade an arrest by flight.

D. On animals, when necessary for the safety of the member or public.

4.120    C    A member is not authorized to use a Taser in the following circumstances:

A. When a subject is running, and no reasonable suspicion or probable cause can be articulated. In other words, the mere fact that a subject is running, or takes off running, should not be the sole justification for the use of a Taser;

B. Against a subject who is in physical control of a vehicle or a piece of equipment that is in motion or engaged for motion, such as an automobile or a motorcycle.

4.121    A Taser causes temporary incapacitation, which can cause secondary injuries from falls. While not prohibited, caution should always be used when deploying the Taser in the following circumstances:

1. Persons who are obviously pregnant;

2. Persons who have a known heart problem or debilitating illness;

3. Near flammable materials or liquids;

4. Persons who are on an elevated position (on rooftops, stairwells, etc.), in water, or other circumstance where a fall may cause drowning, substantial injury or death;

5. Young children and elderly persons;

6. Persons who are handcuffed and/or shackled, unless they are actively resisting or exhibiting active aggression, and/or attempting to harm themselves or others.

7. Against a subject who is in physical control of a piece of equipment that is in motion or engaged for motion, such as a bicycle, forklift, etc.

8. When using multiple cycles on an individual.

WICHITA  015395

| Regulation 4.0 -- Weapons/Use of Force Requirements | Page 4 of 11 | Issue/Rev.: R 01-28-2013 |
| --- | --- | --- |

**4.122  B**   PROBE REMOVAL
After a probe deployment of a Taser, and once the suspect is in custody, proper procedures for removal of the probes shall begin.

    A.  **Non-Sensitive Areas** – Removal of probes in non-sensitive areas may be done by officers according to probe-removal training guidelines, which include the wearing of bio-protective gloves. Officers should inspect the probes after removal to see that the entire probe and probe barb has been removed. In the event that a probe, or probe barb, has broken off and it is still embedded in a subject's skin, the subject shall be provided appropriate medical attention to facilitate the removal of the object.

    B.  **Sensitive Areas -** If a probe is embedded in a sensitive area of the body (i.e. neck, throat, eye, face, female breasts or groin), the wire will be cut approximately six inches from the probe and left for removal by medical personnel.

**4.123  B**   EVIDENCE PROCEDURES
    A.  Any Taser probes that have blood and/or body-fluid on them should be treated as if they are contaminated with an infectious disease, as described in policy 209.09.

    B.  Any injuries associated with a Taser deployment will be photographed.

    C.  The evidentiary value of Taser cartridges, wires and/or probes, will be determined by the facts of each individual case. This would include the nature of the crime(s) involved, severity of injuries, etc. Spent Taser cartridges should be submitted as physical evidence.

**4.124**   A member should monitor a suspect to detect any medical problems or extreme reactions and summon medical assistance immediately if, in the discretion of the member, there are doubts as to the health of the person based on the member's training or the member's previous use of a Taser,

In addition, if the subject exhibits any of the conditions and/or symptoms mentioned below, officers shall either summon medical assistance or transport the subject to a medical facility.

    A.  Subject unconscious even for a short period of time;

    B.  Visible seizure when Taser is NOT being discharged;

    C.  Obvious significant injury from fall or take-down;

    D.  Subject volunteers that he/she is having chest pain or trouble breathing;

    E.  Subject displays persistent confusion or altered mental status more than one minute after application of the Taser;

    F.  Subject requests emergency medical assistance;

    G.  Use of a Taser on a juvenile (17 years of age or younger);

    H.  Subject who is pregnant.

**4.125  D**   Deleted 03-07-2011

**4.126**   The Taser system has a dataport function that provides complete and accurate documentation of each firing. Each Bureau (with Tasers assigned) will be responsible for monthly auditing and tracking of the usage patterns of each Taser unit. The results of these audits will be forwarded to and stored by the Professional Standards Bureau.

USE OF FORCE REPORTING GUIDELINES
**4.127  B**   A.  Members of the Department shall include in their reports an explanation of any use of force. In situations where the officer was defending themselves or another, the report should include the suspect's ability and opportunity to pose the threat, and the jeopardy that was present. In addition, the report should document any injury to the suspect or Department member. If an individual is injured during an arrest, a field supervisor shall immediately be notified. Anytime physical contact is made during a use of force incident a photograph of the suspect and the impact area or areas shall be taken.

    B.  A Response to Resistance Form will be completed and  an Electronic Use of Force/Restraint Evaluation Form shall be completed utilizing Blue Team for each person force is used upon, and by each member who uses force.

    C.  When a member of the Department discharges a firearm [except at the firing range], he/she shall complete a

WICHITA  015396

Tactical Evaluation of Police Combat form [324-405] and submit it to the Professional Standards Bureau, which will conduct an investigation as per Policy 901-Internal Investigations. A copy of the report shall be directed to the Firearms Section.

EXCEPTION: Members of the Department are not required to complete a Response to Resistance Form, Electronic Use of Force/Restraint Evaluation Form or a Tactical Evaluation of Police Combat Form when they are formally interviewed by Investigations Division personnel or an outside law enforcement agency about their use of force or firearm discharge. When formally interviewed by Investigations' personnel, the member's taped statement/transcript and the investigators' notes/reports shall be relied upon to properly document the incident.

4.128    B    A. An Incident Report is required to document any use of force, including any escalation of resistance by the individual and the control options utilized in responding to the resistance. In addition to completing the appropriate Incident Report, , the Response to Resistance Form and the Electronic Use of Force/Restraint Evaluation Form will be completed.

B. Members will fill out Response to Resistance Form and the Electronic Use of Force/Restraint Evaluation Form whenever the following situations occur:

1. Displaying a police weapon as a means to gain compliance. This would include aerosol weapon, baton, Taser, handgun, shotgun, or rifle. Each member who engages in the activity will fill out the form;

2. Discharging a police weapon to accomplish a police objective. This would include using an aerosol weapon on an individual, striking a person with a baton, tasing a suspect, or shooting a duty handgun, shotgun, or rifle. Each member who engages in the activity will fill out the form;

3. A member uses physical force. Each member who engages in the activity will fill out the form;

4. A member handcuffs a person for "officer safety" reasons only. Each member who engages in the activity will fill out the form. (Members may handcuff individuals when the member reasonably believes it is necessary to prevent injury to himself/herself or others [302.06 A].)

5. Whenever directed by a supervisor.

C. Members are not required to fill out a Use of Force/Restraint Evaluation Electronic Form when:

1. Handcuffing a person during an arrest situation and have used no other force;

2. Only observing in force situations and have not engaged;

3. Patting suspect down during frisk situations.

4. Displaying of a police weapon other than as a means of gaining compliance. This would include such activities as Search Warrants and building searches when conducted in accordance with current departmental training.

4.129    B    SUPERVISORY REQUIREMENTS
A. Any time a member discharges a firearm or deploys a Taser (stun drive and/or probes), a supervisor shall respond to the scene of the incident.

B. For any other use of force incident, a supervisor is expected to make the incident scene if at all possible. The supervisor will review the completed Response to Resistance Form and the Electronic Use of Force/Restraint Evaluation Form, and electronically sign it. If the supervisor is unable to make the scene of the use of force, the Response to Resistance Form and Electronic Use of Force/Restraint Evaluation Form will be reviewed by the supervisor no later than the end of the shift. The reason the supervisor was unable to make the scene will be documented on the form.

4.130    B    Deleted 03-07-2011

4.131      UNNECESSARY / EXCESSIVE FORCE:
In situations, other than as a last resort, members of the Department will utilize only those weapons and defensive tactics that have been taught to them by the Training Bureau. Only such force as is objectively reasonable, based on the totality of the circumstances, to effectively bring an incident under control, in making a lawful arrest, while protecting the life of the member, or the life of another person.

     C    A. Unnecessary use of force is strictly prohibited.
     E    B. Excessive use of force is strictly prohibited.

4.132    B    GENERAL FIREARMS AND WEAPONS REGULATIONS
Members of the Department shall not engage in the unsafe handling of a firearm. A member is responsible for and will be held accountable for any incident that occurs from the unsafe handling of a weapon.

4.133    B    All firearms will be properly secured at all times. When a member is not in uniform, firearms will be carried in a concealed manner at all times, except when on the fourth, fifth, and sixth floor of City Hall, or in any police facility or with authorization of a commissioned police supervisor.

WICHITA 015397

| Regulation 4.0 – Weapons/Use of Force Requirements | Page 6 of 11 | Issue/Rev.: R 01-28-2013 |

4.134    A    Unless permitted by the court, a member will not display any firearm on his/her person when attending any courtroom proceeding. Members will unload and store the firearm with a court liaison member, or place it in a weapons locker or a locked personal locker for safekeeping.

4.135    A    A member when off-duty, away from his/her place of residence and not in uniform, shall have in his/her possession at all times, his/her badge and police identification card, and in addition, is authorized and encouraged to carry a fully-loaded, departmentally-approved firearm in a secure manner.

### CARRY/USE AUTHORIZED DUTY FIREARMS/EQUIPMENT ONLY

4.136    C

A. Each commissioned member will be issued a city-owned firearm to be carried on-duty as his/her primary duty weapon. Personally owned firearms may not be carried as primary duty weapons. Members may carry personally owned weapons only as a backup or secondary weapons while on duty. All personally owned firearms carried for backup or secondary duty purposes, are limited to those approved by the Chief of Police. A list of personally owned weapons approved for duty use shall be maintained by the Firearms Section.

B. Reserve, Station, Security and Warrant Officers shall carry only a city-owned firearm while on-duty, and are not authorized to carry a city-owned firearm while off-duty.

C. Prior to carrying any firearm, an authorized member must successfully complete any training required by the Firearms Section.

D. A member who is assigned to the Undercover Section of the Special Investigations Bureau may carry a duty or off duty firearm that is not on the list of departmentally approved weapons. The weapon utilized by the member must be approved and inspected by the Firearms Section Commander at the discretion of the Chief of Police. Prior to carrying the firearm, the member must successfully complete any training and qualifications required by the firearms section.

E. Selected commissioned members of the Department will be issued a city-owned patrol rifle to be carried on duty. These members will receive training that is specific to the Patrol Rifle.

4.136.01    C    ### CARRY/USE OF FIREARMS FOR OFF-DUTY PURPOSES

Commissioned officers are not required to carry a handgun off-duty. Commissioned officers may choose to carry an off-duty handgun under the authority of their City of Wichita Police Department law enforcement commission. Each commissioned officer who carries a handgun off-duty will be required to comply with the requirements herein. Each commissioned member is subject to the same responsibilities, restrictions and regulations for carrying a handgun off-duty as they are when in an armed on-duty status.

A. When a firearm is carried off-duty, each Department member will carry his/her handgun in a properly secured and a concealed manner so that it is not in view of the public.

B. When a firearm is carried off-duty, the Department member must also carry his/her Department issued badge and identification card on his/her person.

C. The handgun each member carries off-duty must be of the caliber .380 ACP, .38 Special, .357 magnum, 9mm parabellum, .40 Smith and Wesson or .45 A.C.P. The handgun must be of acceptable quality and craftsmanship as determined by the Firearm Section Commander. A list of acceptable weapon brands will be kept by the Firearms Section.

D. Off-duty handguns are not authorized for carry on duty, or while working any part time employment, unless they are one of the weapons approved by the Firearms Section as approved for duty back-up weapons.

E. Each commissioned Department member who carries a handgun off-duty will be required to qualify annually with the weapon and have that weapon listed on his/her departmental weapon registry. Failure to qualify with the off-duty handgun prohibits the department member from carrying the handgun in an off-duty status.

F. Ammunition used for off-duty purposes will be the responsibility of each Department member. The ammunition must be inspected by the Firearm Section Commander and will be consistent with the ammunition issued by the Department as duty ammunition.

G. Department members will not modify or authorize the modification of any off-duty handgun in such a manner that deviates from the manufacturer's safety specifications.

H. The Firearm Section Commander will inspect every handgun for functionality and safety prior to it being carried off-duty. The Firearm Section Commander will record the make, model and serial number of the weapon and include it on the member's off-duty weapons card.

| Regulation 4.0 -- Weapons/Use of Force Requirements | Page 7 of 11 | Issue/Rev.: R 01-28-2013 |
|---|---|---|

    I.  Commissioned members of the Department shall not carry a handgun in an off-duty status while intoxicated or while under the influence of drugs or a combination thereof, excluding drugs as prescribed by a physician or dentist, if the prescribed drugs do not affect the Department member's ability to function normally or properly.

J. Reserve officers shall not carry a handgun on his or her person when in an off-duty status, unless:

    1.  The Reserve Officer is a retired law enforcement officer and meets the federal criteria for carrying a concealed firearm in a retired status
    2.  The Reserve Officer is a tactical medic assigned to the S.W.A.T. team

Note: This rule does not preclude a Reserve Officer from obtaining a State of Kansas Carry Concealed Permit.

**4.137  B**  Each member authorized to carry a firearm shall have their weapon with them when on-duty, except as authorized by the Chief of Police or the respective Division Commander, or as ordered by an appropriate official.

FIREARMS REGISTRY

**4.138  E**  The Firearms Section will maintain a Firearms Registry which will list the approved weapons to be used by each member.

    A.  When taking official police action on- duty, a member shall use only firearms which are listed on his/her duty firearms registry or a departmentally-issued shotgun or rifle.  A member may have a maximum of three (3) firearms registered on his/her duty firearms registry.

    B.  When taking official police action off duty, a member shall use only firearms which are listed on his/her duty or off duty firearms registry.  A department member may have a maximum of two (2) firearms registered on his/her off duty firearms registry.

**4.139  D**  Each authorized member shall carry and use only ammunition which has been approved by the Firearms Section Commander, for both on- and off-duty firearms. Ammunition for duty and back-up firearms shall be replaced annually.

**4.140  B**  Only departmentally-approved holsters and magazines shall be carried while on-duty by authorized members. The Firearms Section Commander shall be responsible for setting departmental standards for these items. Magazines for semi-automatic pistols must be of the same manufacturer as the pistol. Extended magazines beyond a seventeen (17) round capacity are prohibited, except for SWAT members, and only when on-duty in that capacity.  Tactical drop holsters will only be worn by the following personnel during the following situations;

    A.  Members of the S.W.A.T. team may wear tactical drop holsters during any S.W.A.T. team deployment and during official S.W.A.T. team training exercises.

    B.  Members of the S.C.A.T., Undercover narcotics Officers and members of the Gang Unit or any department member who is assisting a specialty unit, may utilize tactical drop holsters when they are conducting dynamic entry into a building, high risk warrant service or when equipment being worn necessitates a drop holster be utilized.

    C.  Members of the E.O.D. team may utilize the tactical drop holster when they are assigned as part of the dynamic entry team or when equipment they are utilizing necessitates a drop holster be worn.

    D.  Once a Department member completes the assignments that would require the use of a tactical drop holster, the Department member shall change into a regular duty gear/holster prior to returning to regular duty.

    E.  Department members who utilize the tactical drop holster as part of their special assignment shall be required to attend training annually utilizing the tactical drop holster.

**4.141  D**  No member of the Department shall modify, or authorize modification of any duty firearm, which deviates from manufacturer's specifications or W.P.D. purchase specifications without the approval of the Firearm Section Commander.

**4.142  A**  Deleted 03-07-2011

**4.143  A**  Deleted 03-07-2011

**4.144  A**  Deleted 03-07-2011

FIREARMS PROFICIENCY TESTING

**4.145  A**  A. Every member who is authorized to carry a firearm shall be required semi-annually to maintain departmental proficiency standards and Kansas Commission on Peace Officer Standards and Training, (C.P.O.S.T.) standards with his/her duty firearm. Detailed information on proficiency standards are posted to the Police Secure Site shared documents. Firearms proficiency testing for the W.P.D. approved course of fire will be held each year and proficiency testing for Kansas C.P.O.S.T. standards will be held in the Fall of each year.

WICHITA  015399

B.  Every member of the department who is authorized to carry a firearm shall be required to maintain the Kansas Commission on Peace Officer's Standards and Training (C.P.O.S.T.) annual firearms qualification as mandated by K.S.A. 74-5607. Every member of the department who is authorized to carry a firearm must achieve a passing score of seventy percent or greater with his/her duty weapon on the mandated Kansas C.P.O.S.T. course of fire. Every member who is authorized to carry a firearm must also successfully complete the departmentally approved course of fire annually with a minimum score of seventy percent.

1.  Every member must successfully complete the C.P.O.S.T. qualification annually within the state of Kansas training year July 1st through June 30th. The Training Bureau Commander must request an extension from the Kansas C.P.O.S.T. for any member who fails to successfully complete the C.P.O.S.T. qualification by June 30th. The Kansas C.P.O.S.T. qualification will be held during the Fall qualification cycle each year.

2.  Every member must successfully complete the W.P.D. approved course of fire once annually. The W.P.D. course of fire will be held during Spring annual qualifications.

3.  Every member will be allowed two (2) initial attempts to meet the C.P.O.S.T. proficiency standard and two attempts to meet the W.P.D. approved course of fire during the respective qualifications. Failure to meet the C.P.O.S.T. or Department standard of seventy percent will result in discipline.

4.  A member who fails to meet proficiency standards, shall be scheduled to attend a four-hour remedial firearms training session, during which he/she will be given two (2) additional attempts to meet the C.P.O.S.T. or W.P.D. course of fire proficiency standards.

5.  The Training Bureau Commander shall submit an officer's report to the Chief of Police advising of any member who has not met the C.P.O.S.T. firearm proficiency standard or W.P.D. firearm proficiency standard during remedial training. Any member who fails to meet the C.P.O.S.T. or W.P.D. firearm proficiency standard with his/her duty firearm shall be reassigned to a non-firearm position. The member shall attempt to meet the proficiency standards as soon as possible, but no later than thirty (30) calendar days following his/her reassignment to non-firearm duties.

F     6.  During the thirty-day period following reassignment to non-firearm duties, the member shall be allowed individual practice, subject to Range availability. The Training Bureau shall schedule a two-hour period once per week during this thirty-day period for the member to fire through the respective firearms course twice. It will be mandatory that the member attends each scheduled firearms qualification course until he/she has met the C.P.O.S.T. proficiency standard or the W.P.D. firearms course proficiency standard. At the end of the thirty-day period, the member must be able to meet the C.P.OS.T. firearms proficiency standard or the W.P.D. firearms course proficiency standard.

4.146          Deleted 03-07-2011

4.147          The Chief of Police may approve a member's request for a waiver of firearm proficiency testing. The member will be notified of the Chief of Police's decision on the waiver. Any waiver granted by the Chief of Police shall be sent to the Firearms Section with a copy included in the member's personnel file.

4.148    B     During firearm proficiency testing periods and at any other time as required, the Firearms Section shall be responsible for inspecting all duty firearms.

4.149    A     Deleted 03-07-2011

4.150    NONE  During an inspection period, any firearm found to be defective or not in compliance with the manufacturer's specifications will be removed from the member's firearms registry and he/she temporarily will not be authorized to carry it. If the defective firearm is a personally-owned secondary or backup weapon, the Firearms Section shall notify the member's Bureau Commander, in writing, that the member has a defective personally-owned firearm and he/she is prohibited from carrying it until it is again listed on his/her firearms registry. If it is the member's duty firearm, the Firearms Section will issue a city-owned firearm to replace it. The Firearm Section is responsible for repairing all city-owned firearms, and if possible, individually owned firearms. All costs for parts incurred in the repair of individually owned firearms will be covered by the member.

4.151    E     In order to place a member's firearm back on his/her firearms registry after removal for defects, he/she must turn the firearm over to the Firearms Section. The Firearms Section will either repair it, or have the member return it to the factory for repair. The Firearms Section must inspect the firearm before he/she will be permitted to carry his/her individually owned firearm again as a backup weapon.

4.152          Deleted 03-07-2011

4.153          Deleted 03-07-2011

4.154    F     Deleted 03-07-2011

WICHITA  015400

| Regulation 4.0 – Weapons/Use of Force Requirements | Page 9 of 11 | Issue/Rev.: R 01-28-2013 |

4.155    The required firearms qualification course and departmental firearms proficiency standards shall be developed by the Training Bureau, Kansas C.P.O.S.T. and approved by the Chief of Police.

SHOOTING BADGES
4.156    Members must qualify for shooting badges during each firearm-proficiency testing cycle. Members are authorized to possess and wear shooting badges for the following levels of proficiency:

1. ............................Master  98% or above
2. ............................Expert  90% to 97%
3. ............................Sharpshooter 80% to 89%

4.157  A    Deleted 03-07-2011

SHOTGUN PROFICIENCY TESTING
4.158    Commissioned personnel shall be required to maintain departmental proficiency standards with the police shotgun. Detailed information on proficiency standards are posted to the Police Secure Site shared documents. Shotgun proficiency testing shall normally be held in the spring and fall, during firearms proficiency testing.

4.159    The Chief of Police may approve a member's request for a waiver of shotgun proficiency testing. The member will be notified of the Chief of Police's decision on the waiver. Any waiver granted by the Chief of Police shall be sent to the Firearms Section with a copy included in the member's personnel file.

4.160    Every member will be allowed two (2) initial attempts to meet departmental shotgun proficiency standards during each mandatory in-service training period.

4.161  A    Any member failing to meet departmental shotgun proficiency standards shall be scheduled to attend a four-hour remedial shotgun training session, during which he/she will be given two (2) additional attempts to meet departmental shotgun proficiency standards. Discipline shall be imposed if a member fails to qualify during the two additional attempts following remedial training.

4.162    The Training Bureau Commander shall submit an Officer's Report to the Chief of Police advising of any member who still has not met departmental shotgun proficiency standards. Any member who fails to meet departmental standards with the shotgun shall be reassigned to a non-firearm position; the actual assignment shall be left to the discretion of the Division Commander of the member involved. The member shall attempt to meet the minimum shotgun proficiency standard as soon as possible, but no later than thirty (30) calendar days following his/her re-assignment to non-firearm duty.

4.163  F    During the thirty-day period following reassignment to non-firearm duties, a member shall be allowed individual practice, subject to range availability. The Training Bureau shall schedule a two-hour period once a week during this thirty-day period for the member to fire through the shotgun qualification course twice. It will be mandatory that the member attends each scheduled shotgun qualification course until he/she has met departmental shotgun proficiency standards. At the end of the thirty-day period, the member must be able to meet departmental shotgun proficiency standards.

4.164    The required shotgun qualification course and departmental shotgun proficiency standards shall be developed by the Training Bureau, and approved by the Chief of Police.

SHOTGUNS/MINI-ARSENALS
4.165  A    Shotguns and mini-arsenals shall be issued to Bureau Commanders of the Field Services Division, who shall be responsible for their assignment, control, and scheduling of training.

4.166  A    Each member shall verify, through personal inspection, that the shotgun assigned to his/her vehicle is in proper working order, there is no round in the chamber, and the safety is on before the start of his/her tour of duty.

4.167  B    At no time will a round be chambered in the shotgun except when a member is making a call in which he/she reasonably believes the shotgun may be needed. After making the call, in a safe environment, the shotgun should be cleared.

4.168  A    Any member who discovers a malfunction or defect in the shotgun assigned to him/her shall report it to a field supervisor as soon as possible. The field supervisor shall be responsible for having the shotgun repaired or replaced.

4.169  A    Members with a shotgun assigned to their vehicles are encouraged to have a shotgun in their physical possession when responding to appropriate calls. When responding to a call with a shotgun, the member shall carry it in a safe and secure manner. A supervisor may control the number of shotguns assigned to a call.

PROHIBITED EQUIPMENT
4.170  B    Unless otherwise directed by the Chief of Police, members of the Department shall not, while either on-duty or while engaged in off-duty employment, have in their possession any weapon, flashlight or equipment not authorized by the training academy, or the Chief of Police- this regulation does not apply to firearms or tactical knives.

REPLACEMENT OF WEAPONS/AMMUNITION
4.171    If a Bureau-assigned weapon is placed into evidence, the Bureau Commander will notify the Firearms Section, whose

personnel will assign a replacement weapon to that Bureau from the Firearms Section inventory.

4.172         Any weapon that needs repair will be taken to the Firearms Section. If the weapon cannot immediately be repaired, it will be removed from the Bureau's inventory and a replacement weapon assigned.

4.173    A    When it is necessary to submit a member's firearm as evidence and the Firearms Section is unavailable to replace it, the firearm may be replaced from the Professional Standards Bureau weapons locker. It is the responsibility of the member receiving the firearm to contact the Firearms Section as soon as possible so that the serial number of the firearm issued to him/her from the weapons locker can be recorded.

4.174         When a Bureau's ammunition or mini-arsenal supplies are depleted or in need of replacement due to age or leakage, they shall be replaced by the Firearms Section. Should an emergency exist and immediate replacement is needed after hours, Watch Commanders shall contact the Training Bureau Commander or Range-master for replacement.

4.175    A    When a Department member determines that the contents of an aerosol weapon canister have been expended, or it becomes outdated, the empty/outdated can will be returned to the Training Bureau. The Training Bureau shall then issue the member a new canister of a departmentally approved aerosol weapon. The Training Bureau will determine the need for replacement of the weapon.

### PATROL CARBINE RIFLES

4.176         Selected members of the department will be issued city owned patrol carbine .223 caliber rifles. These members will receive training on the deployment and the tactical use of these rifles.

4.177         Patrol carbine rifles may be used on those calls where in the discretion of the officer, additional safety risk is inherent or the specific situation requires the use of a rifle to successfully mitigate the threat. Generally, only those incidents wherein a high probability of armed confrontation exists would justify the deployment of the rifle. Officers must evaluate the need for the rifle against the possible problems that might be encountered if the situation resulted in a foot pursuit, a physical confrontation where the use of lethal force would not be justified or assuming control of prisoners, etc. The rifle shall not be surrendered or abandoned. Situations in which trained and qualified officers may deploy rifles include, but are not limited to:

      1. Incidents involving the use of a weapon, robbery in progress calls or hold up alarms;
      2. Incidents where suspects are or may be wearing ballistic resistant body armor;
      3. Perimeter containment situations involving a hostage situation and or barricaded subject;
      4. Response to an Active Shooter Incident;
      5. High risk traffic stops when an officer has reason to believe the occupant(s) may be armed;
      6. When an officer has reasonable expectation there is a potential for an armed subject encounter requiring capabilities exceeding those of the officer's primary duty firearm;
      7. At the direction of a supervisor;

4.178         Members of the department are responsible to ensure that their issued patrol carbine rifles are in proper working order. Patrol carbines shall be inspected at the beginning of each watch.

4.179         Members of the department shall store his/her issued patrol carbine rifle inside of his/her residence when in an off-duty capacity. Members of the department shall not store his/her patrol carbine rifle in a vehicle while in an off-duty capacity unless such member is assigned to the S.W.A.T. team.

4.180         The patrol carbine will be carried in the vehicle with no round in the chamber, bolt forward, dust cover closed and the safety in the on position. When the patrol carbine is taken from the vehicle for use, other than at the Firearms Range, a round should be chambered, however the safety should remain in the on position until the officer determines that he/she will fire the weapon at which point the weapon safety should be moved to the off position. Prior to the officer returning the weapon to the vehicle, the officer will empty the chamber and store the weapon with the bolt forward on an empty chamber, dust cover closed and the safety in the on position.

4.181         All malfunctions and defects found with the patrol carbine shall be reported to a supervisor who will be responsible for having the weapon inspected and repaired by Range Staff.

4.182         All patrol carbine rifle repairs or modifications will be at the discretion of the Firearm Section Commander.

4.183         Department members will not alter or modify a departmentally owned carbine rifle in any manner, without authorization from the Firearm Section Commander.

4.184         Those members of the department who are issued the patrol carbine will successfully complete a patrol rifle operator course instructed by Range Staff. The department member will be required to achieve a minimum proficiency of 80 percent to be issued a patrol carbine rifle. Each department member that is issued a patrol carbine will be required to maintain the 80 percent proficiency requirement on the Patrol Rifle twice per year during qualifications on the approved patrol rifle course of fire. An officer, who fails to meet the minimum proficiency requirement of 80 percent after two attempts, will be suspended from carrying the patrol carbine rifle.

WICHITA  015402

| Regulation 4.0 – Weapons/Use of Force Requirements | Page 11 of 11 | Issue/Rev.: R 01-28-2013 |
|---|---|---|

4.185        No officer should attempt to search or handcuff any person while holding the rifle unless absolutely necessary.

**Regulation 4.2--Range Rules**        Issue/Rev.: R 02-16-2012

        _Penalty_

4.201        The firearms range is a Section of, and under the control of the Wichita Police Department and the Sedgwick County Sheriff's Office.

4.202        The allowed hours of operation for outdoor live firing shall be:

        A.   Monday - Thursday:      0700 to 2200 hours;

        B.   Friday:      0700 to 1800 hours;

        C.   Saturday:      0700 to 1800 hours, provided:

             1.   Open no more than four (4) hours on any given Saturday, and;

             2.   Open a maximum of seven (7) Saturdays in any given calendar year;

        D.   Sunday:      Closed;

        E.   Official county holidays:   Closed.

4.203  C    A certified Wichita or Sedgwick County training facility firearms instructor will be present during any outdoor live firing.

4.204  B    Only departmental approved weapons/ammunition used in law enforcement activities will be fired at the range, unless prior approval is received from the Firearm Section Commander.

4.205  D    Any exceptions to 4.204 shall be approved in advance by the Sheriff or Chief of Police or their designee. These exceptions shall be limited to special circumstances such as test firing of evidentiary weapons, for demonstration purposes or similar unique situations.

4.206  D    Deleted 03-07-2011

4.207        The range will be clearly marked for use by authorized law enforcement personnel only.

4.208  C    No alcoholic or cereal malt beverages will be allowed at the range. No persons under the influence of alcohol or drugs will be admitted to the range.

4.209        All members utilizing the range will sign the ammunition check out log, prior to checking out ammunition and using the facility.

4.210  A    Members entering the range office will be permitted to have a loaded weapon, provided the weapon remains holstered.

4.211  A    Upon arriving at the range, members are expected to demonstrate cooperation with any members already engaged in the firing process.

4.212  B    Posted Range Rules will be followed.

**Regulation 4.3--Firearms Training Simulator**        Issue/Rev.: R 05-12-2008

        _Penalty_

4.301  NONE  With the exception of auxiliary equipment purchased by an individual agency, the firearms training simulator is jointly and equally owned by the Wichita Police Department and the Sedgwick County Sheriff's Office. The firearms training simulator shall be equally available to members of both agencies, with preference given to neither.

4.302  NONE  Operation of the firearms training simulator is restricted to the Firearms Section personnel who have been trained to operate the system. After appropriate training and coordination through the Firearms Section, however, operation may also include:

        A.   Wichita Police Department assistant firearms instructors and selected Field Services supervisory personnel.

        B.   Selected personnel of the Sheriff's Office.

WICHITA 015403